**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MICHAEL R. JIMMISON,

    Plaintiff,

vs.   Case No. 3:07-cv-532-J-12MCR

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental Security Income on January 21, 2004, alleging disability commencing June 1, 2002.[2]  (Tr. 49-51).  The Social Security Administration ("SSA") denied this application initially and upon reconsideration.  (Tr. 28-29, 33-34).  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on April

---

[1] The Parties consented to a United States Magistrate Judge exercising jurisdiction. (Doc. 18).

[2] Plaintiff's original disability onset date in his application for disability benefits was December 1, 2002.  (Tr. 49).  Plaintiff amended his original disability onset date to June 1, 2002 on February 3, 2004.  (Tr. 53-54).

18, 2006.  (Tr. 198-234).  On September 15, 2006, the ALJ denied Plaintiff's claim finding him not disabled within the meaning of the SSA.  (Tr. 11-21).  Plaintiff filed a request for review by the Appeals Council on October 2, 2006.  (Tr. 10).  The Appeals Council denied Plaintiff's request for review on April 27, 2007, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. 6-8).  Plaintiff timely filed a complaint with the United States District Court.  (Doc. 1).

## II.  NATURE OF DISABILITY CLAIM

### A.  Basis of Claimed Disability

Plaintiff claims to be disabled since June 1, 2004, due to poor eyesight, inability to read or write, dyslexia, and persistent migraine headaches.  (Doc. 17, pp. 9-10).

### B.  Summary of Evidence Before the ALJ

Plaintiff was 32 years old at the time of the ALJ's decision and had a ninth grade education that included special education classes.  (Tr. 14-21).  Plaintiff's past work experience consisted of various unskilled occupations, including: landscape laborer, UPS truck loader, assembly line worker, tree service laborer, and wallpaper laborer.  (Tr.16, 71, 80-87, 102).

Plaintiff's medical history is highlighted in the ALJ's decision and therefore, will not be repeated in full here.  However, by way of summary, the record indicates Plaintiff has a history of special education and was classified as educably mentally handicapped by the fifth grade.  Plaintiff eventually dropped-out of school in the tenth grade.  (Tr. 107).  An assessment by Howell Vocational Services on May 4, 2006 revealed that Plaintiff read and spelled at a first grade level.  In addition, Plaintiff performed mathematics at a third

grade level.  (Tr. 111-112).

IQ testing was administered by Dr. Maida on April 12, 2006.   Plaintiff demonstrated a 71 verbal, 81 performance, and a full scale IQ of 74.  (Tr. 17, 166).  Plaintiff's IQ scores were just below the mid-point of the borderline range of intellectual functioning.  (Tr. 17,166).  Dr. Maida also provided diagnoses of major depressive disorder, dyslexia, and borderline intellectual functioning.  (Tr. 167).  Dr. Maida opined that the combination of Plaintiff's disorders resulted in marked limitations of concentration, persistence, and pace.  (Tr. 166-168).  Moderate limitations were noted in regard to daily living activities, and none or mild restrictions were found in social functioning.  (Tr. 169-182).

In addition to Plaintiff's mental impairments, Plaintiff lost his right eye in a hunting accident when he was nineteen.  (Tr. 217).  His vision in his left eye is 20/20-2 with correction.  Further, Plaintiff claims he experiences migraine headaches daily for which he takes Excedrin.  (Tr. 220).

On November 20, 2004, Eric Puestow, MD completed a medical source statement.  (Tr. 154-162).  Dr. Puestow determined that Plaintiff was limited in regard to depth perception and field of vision.  (Tr. 157).  However, Dr. Puestow found Plaintiff free from any exertional limitations.  (Tr. 158).

### C.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c), 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d), 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e), 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f), 416.920(a)(4)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2004, the amended alleged onset date. (Tr. 16). The ALJ determined at step two that Plaintiff's loss of right eye, borderline intellectual functioning, major depressive disorder and dyslexia were severe impairments, based on the requirements in 20 C.F.R. §§ 404.1520(c) and 416.920(a)(4)(ii). (Tr. 16). However, at step three, the ALJ determined Plaintiff's impairments did not meet or medically equal, either singularly or in combination, any of the impairments listed in Appendix 1, Subpart P (20 C.F.R 404.1520(d), 404.1526, 416.920(d), 416.92  and 416.926)  (Tr. 18).

The ALJ further determined Plaintiff had the residual functioning capacity ("RFC") to perform a full range of light work.[3]  Specifically, the ALJ found Plaintiff was able to:

> [o]ccasionally lift/carry 20 pounds and 10 pounds frequently; he can sit-up for 6 hours and stand/walk for up to 6 hours in a normal work day, with regular breaks; he can climb, balance, stoop, kneel, crouch and crawl

(Tr. 16).  In addition, the ALJ found that due to the loss of his right eye, Plaintiff lacked depth perception and his field of vision was limited.  (Tr. 19).  However, the ALJ determined Plaintiff was capable of following directions and of performing simple, repetitive tasks that did not require reading or writing and no more than simple addition.  (Tr. 19).  In making this determination, the ALJ found Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms not entirely credible.  (Tr. 19).

At the hearing, the ALJ utilized the testimony of a vocational expert ("VE").  The ALJ asked the VE to review Plaintiff's past relevant work.  (Tr. 20).  The VE testified that:

> [b]ased on the Plaintiff's RFC, education, inability to read or write, and ability to perform only simple addition, he lacked the capacity to perform his past relevant work

(Tr. 20).  The ALJ accepted the VE's assessment and then asked the VE whether jobs existed in the national economy for an individual of Plaintiff's age, education, past relevant work experience and RFC as determined by the ALJ.  (Tr. 20).  The VE responded that given the aforementioned factors, Plaintiff could work in unskilled-light occupations, such as: a cafeteria attendant ( 40,000 positions in the national economy and 500 in Florida) and carwash attendant (30,000 positions in the national economy and

---

[3] Light work requires lifting of up to 20 pounds, with more frequent lifting of 10 pounds.  A significant amount of standing or walking may be required to perform light work.  20 C.F.R. §§ 404.1567(b), 416.967(b) (2007).

700 in Florida). (Tr. 20-21). Accordingly, at step five, the ALJ determined that given Plaintiff's vocational factors and RFC, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 21). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the social security act. (Tr. 21).

### III. ANALYSIS

#### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the

decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings).

### B.     Issues on Appeal

Plaintiff argues the following three issues on appeal: (1) the ALJ failed to recognize Plaintiff's impairments met listing 12.05 part C; (2) the ALJ ignored key pieces of evidence concerning Plaintiff's frequent headaches, his academic records, and his vocational assessment; and (3) the ALJ improperly asserted Plaintiff could "overcome" his dyslexia without citing any authority for this assertion. (Doc 17, p. 8).

#### 1.     Whether the ALJ erred in determining Plaintiff's impairments did not meet the criteria for disability under a listed impairment

Plaintiff argues the ALJ erred in the third step of his analysis because the combination of Plaintiff's low verbal IQ, dyslexia, and major depressive disorder meet listing 12.05(C) and thus Plaintiff is entitled to a disability finding. (Doc. 17, pp. 8-10). Further, Plaintiff claims that by "summarily stating that the Plaintiff's impairments do not meet or equal a listing, the ALJ failed to provide any meaningful discussion of actual listings considered." (Doc. 17, p. 9). Plaintiff claims this is an error warranting remand. (Doc. 17, pp. 9-10).

The listing of impairments in the Social Security Regulations identify impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his age, education or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can

establish the existence of a listed impairment.  Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984).  However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he is disabled.  Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986); Wilkinson v. Bowen, 847 F.2d 660, 663 (11th Cir. 1987).

Plaintiff argues the ALJ erred in not finding Plaintiff met listing 12.05(C).  Here, it was Plaintiff's burden to establish presumptive disability under 12.05, which provides, in pertinent part:

> *Mental Retardation:* Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e.,the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  The introductory material to the mental disorders listing clarifies Listing 12.05, stating:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria, [the Commissioner] will find that [the claimant's] impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (emphasis added).  Because Plaintiff argues he meets the criteria of 12.05(C), he must satisfy both the introductory paragraph to 12.05 and the following:

> A valid verbal, performance or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work-related limitation or function

8

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C) (emphasis added).

In order for Plaintiff to satisfy his burden as to the listed impairment, he would have to prove: (1) subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (prior to age 22), (2) a valid IQ score 70 or below (verbal, performance, or full scale) and (3) another impairment imposing an additional and significant work related limitation of function. Lowery, 979 F.2d at 837.

In the instant case, Plaintiff provided the ALJ various educational records in an attempt to satisfy the requirement of subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. The ALJ noted the Plaintiff's history of special education, poor performance in all levels of education, and inability to read. (Tr. 17). However, assuming these records were sufficient to satisfy the diagnostic description in the introductory paragraph of listing 12.05, Plaintiff must also satisfy the criteria under subsection C: a valid IQ score below 70 and another significant limitation. Plaintiff agues the combination of his valid IQ score, dyslexia and major depression are sufficient to satisfy the 12.05(C) listing. However, this argument is not persuasive because Plaintiff's IQ scores are higher than the requirements of 12.05(C).  Plaintiff's IQ score, as obtained by Dr. Maida are as follows: verbal 71, performance 81, full scale 74.  While these scores show Plaintiff is in the borderline intellectual functioning range, the scores are higher than the requirements imposed by section 12.05(C).  Therefore, even if Plaintiff satisfies the "other severe impairments" requirement with evidence of his limited field of vision, dyslexia and inability to read, because his IQ score falls above what is required in section 12.05(C), he has not met the

listing.

Plaintiff appears to argue that he meets the 12.05(C) requirements because Dr. Maida stated Plaintiff may be functioning at a mildly retarded range. (Doc. 17, p. 9). However, the ALJ properly discounted Dr. Maida's opinion. In the Eleventh Circuit, the opinion of a treating physician is given substantial or considerable weight, unless good cause is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). In Washington v. Barnhart, the court set forth the rationale for the preference of the treating physician's opinion:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique prospective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive or brief hospitalizations.

175 F.Supp.2d 1340, 1346 (M.D. Ala. 2001) (quoting 20 C.F.R. § 404.1527(d)(2)). While treating physicians' opinions are provided substantial weight, the same is not true for non-treating physicians. Instead opinions from non-treating sources do not enjoy the same status and an ALJ is not required to give a non-treating physician's opinion substantial or considerable weight. 20 C.F.R. § 404.1527(d)(2). A non-treating physician is:

> a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502. This Court agrees with the ALJ and the Commissioner that Dr. Maida is a non-treating physician. (Tr. 18) (Doc. 20, p. 13). Dr. Maida evaluated Plaintiff for the first and only time on April 17, 2006. (Tr. 163). Further, because Dr. Maida only

10

evaluated Plaintiff on one occasion, he cannot provide a detailed, longitudinal picture of Plaintiff's impairment as set forth in 20 C.F.R. § 404.1527(d)(2).  Therefore, because Dr. Maida was not a treating physician within the meaning of Eleventh Circuit precedent and 20 C.F.R. §§ 404.1502, his opinion was not afforded controlling weight and he ALJ was under no duty to accept his opinion.

In any event, the ALJ is required to consider every medical opinion that is in record.  See 20 C.F.R. §§ 1527(d), 416.927(d).  While the opinion of an examining physician is entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. Fla. 1883).  In the instant case, the ALJ rejected Dr. Maida's opinion that the combination of Plaintiff's disabilities resulted in functional mild retardation when he determined Dr. Maida's opinions and responses were internally inconsistent.  (Tr. 18).  With respect to Dr. Maida's opinion, the ALJ stated:

> On the date of the interview, Dr. Maida also provided check-box and hand-written responses to form Psychiatric Review Technique, which included his opinion that the combination of the claimant's reading disability, his verbal IQ score of 71 and his slow processing resulted in functional mild mental retardation.  In the same form he indicated that it was also his opinion that the claimant (1) had a moderate restriction of activities of daily living; (2) mild difficulties maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; that the claimant did not have repeated episodes of decompensation, each of extended duration.  These responses mean the claimant does not meet listing 12.04 or 12.06, as Dr. Maida did not find the claimant to have a marked impairment in two or more of the criteria.  Nevertheless, Dr Maida opined that the claimant met listing

> section 12.06 and equaled listing 12.04.  As a result, Dr.
> Maida's responses and opinions on the aforementioned form
> are internally inconsistent and the exhibit is hereby rejected by
> the undersigned.

(Tr. 18).  In addition, the ALJ noted other inconsistencies in Dr. Maida opinion with regard to Plaintiff's mental status:

> Dr. Maida opined that based on the claimant's verbal IQ score
> of 71 and his dyslexia, he should be considered functionally
> mildly retarded.  However, he also stated that the claimant's
> performance IQ score of 81 suggested he was functioning at
> the low-average level and were his vision intact, he could
> succeed in an indoor work environment involving repetitive
> manual tasks...  The undersigned accepts his opinion that the
> claimant has borderline intellectual functioning and dyslexia,
> but rejects the opinion that due to the combination of his
> verbal IQ score and his dyslexia he should be considered
> functionally mildly retarded.

(Tr. 17).

Furthermore, because Dr. Maida stated he had not been provided with any vision test results, the ALJ properly noted that Dr. Maida's opinion about Plaintiff's vision was based on a false or conclusory premise.  (Tr. 17).  Additionally the ALJ noted that a later opinion reached a contrary result with respect to Plaintiff's left eye.  Dr. Cheil Wind stated that the vision in Plaintiff's left eye was correctable to 20/25.  (Tr. 18).  Dr. Wind further stated that Plaintiff's left eye was in normal limits.  (Tr. 18).

The ALJ properly evaluated the opinion of Dr. Maida, and explained his assessment of the opinion in detail.  The ALJ clearly stated that his decision to reject Dr. Maida's opinion was based on the internal inconsistencies and false or conclusory statements within the opinion.  (Tr. 18).  This Court finds these reasons to be supported by substantial evidence and therefore, the ALJ's treatment of Dr. Maida's opinion was proper.

Plaintiff next claims that by "summarily stating that the Plaintiff's impairments do not meet or equal a listing, the ALJ failed to provide any meaningful discussion of actual listings considered." (Doc. 17, p. 9). Plaintiff claims this is an error warranting remand. (Doc. 17, pp. 9-10). Plaintiff is correct that there are numerous cases indicating it is not appropriate for an ALJ to summarily state that a plaintiff's impairments do not meet a listing. (Doc. 17. pp. 9-10). However, in this circuit, the ALJ is not required to make a specific finding regarding whether a claimant's impairments meet or equal a listing as this finding may be implied. See Keane v. Commissioner of Social Security, 2006 WL 3024709 (11th Cir. 2006) (citing Hutchinson v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986)).

In any event, it is clear from the record that the ALJ did more than summarily state that Plaintiff did not meet a listing. Indeed, the ALJ specifically stated Plaintiff's impairments did not meet or medically equal any listing, "including, but not limited to, those impairments found under sections 2.00 and 12.00." (Tr. 18). Therefore, this Court rejects Plaintiff's contention that the ALJ did not provide any meaningful discussion of the listings considered. The ALJ properly considered all the relevant medical opinions and substantial evidence supports the ALJ's determination that Plaintiff did not meet the criteria for disability under listing 12.05(C).

### 2.     **Whether the ALJ erred by not considering evidence in the record**

Plaintiff next argues the ALJ erred by neglecting key pieces of evidence in his decision. (Doc 17, p. 10). Specifically, Plaintiff claims the ALJ failed to consider or discuss: (1) Plaintiff's treatment for headaches, (2) Plaintiff's academic records, and (3)

the fact that Plaintiff was not able to take portions of the May 4, 2006 vocational assessment due to illiteracy. (Doc. 17, p. 10). Plaintiff claims the ALJ has the duty to consider all impairments, as well as the combined effect of such impairments, and that remand is necessary when an ALJ fails to properly consider a claimant's condition despite evidence in the record of the diagnosis. (Doc. 17, p. 10).

In the Eleventh Circuit, the ALJ must consider "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand." McCray v. Massanari, 175 F.Supp.2d 1329, 1336 (M.D. Ala. 2001). However, "an ALJ is not required to discuss every piece of evidence submitted." Id. (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Further, "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id.; see also Wheeler v. Apfel, 224 F.3d 891, 896 (8th Cir. 2000) ("That the ALJ did not attempt to describe the entirety of Wheeler's medical history does not support Wheeler's argument that the ALJ disregarded certain aspects of the record.")

In the instant case, Plaintiff is correct that the ALJ has a duty to consider all of Plaintiff's impairments. However, the Plaintiff confuses the ALJ's duty to consider all the medical evidence with his duty to *discuss* all the medical evidence. While ALJ did not specifically discuss Plaintiff's treatment for headaches at Orange Park Medical Center, Plaintiff's academic records, and the May 4, 2006 vocational assessment, it is clear from Eleventh Circuit case law the ALJ was not required to. In any event, the ALJ specifically mentioned Plaintiff's testimony about his migraine headaches, his history of special

education, and his inability to read in the decision.[4] (Tr. 19). Moreover, the ALJ discussed Plaintiff's inability to read and history of special education in the section of his decision devoted to Dr. Maida's opinion.[5] (Tr. 17). Additionally, in the transcript from Plaintiff's disability hearing on April 18, 2006 (Tr. 198-234), the ALJ posed hypothetical questions to the VE which included Plaintiff's special education and literacy issues as well as a hypothetical regarding Plaintiff's migraine headaches. (Tr. 229-234). Accordingly, while the ALJ may not have specifically discussed the evidence referred to by Plaintiff, it is clear that he considered it and the Court finds no error.

**3. Whether the ALJ erred by asserting that Plaintiff can overcome his dyslexia without citing any authority**

Lastly, Plaintiff claims the ALJ erred by asserting "dyslexia is a condition that people can be educated to overcome" without citing any authority for his statement. (Doc 17, p. 11) (Tr. 18). This Court agrees with the Commissioner that, "in the context of the case, the ALJ's observations about the possible ability to overcome dyslexia added nothing to the substance of the decision." (Doc. 20, p. 19). However, this Court also agrees that to the extent the ALJ's comment was an error, it was harmless. In his decision, the ALJ specifically acknowledged Plaintiff's education level, his dyslexia, and the inability to read or write. (Tr. 18-19). Further, as mentioned in the previous section, when posing

---

[4] For example, the ALJ stated "[t]he claimant testified that he had a 10th grade education and had been placed in special education classes. He stated that he had a first grade reading level... He said he was subject to migraine headaches on the right side of his head for which he took six Excedrin per day... With respect to employment, he responded that he had always been fired for inability to read..." (Tr. 19)

[5] For example, the ALJ stated "[t]he claimant said that he had been in special education in school, but had quit school in the tenth grade, as he was never taught to read and was unable to take tests." (Tr. 17).

questions to the VE, the ALJ specifically asked the VE to consider a claimant with the Plaintiff's "poor ability to read or write." (Tr. 230). Finally, the jobs selected by the VE, cafeteria attendant, and car wash attendant, were selected in part because they do not require the ability to read. (Tr. 230). This Court agrees with the Commissioner that there is no evidence indicating the ALJ's comment about Plaintiff's ability to "overcome his dyslexia" improperly swayed the ALJ's findings. Indeed, it is clear from the record that the ALJ properly considered the Plaintiff's inability to read. Therefore, the undersigned finds substantial evidence supports the ALJ's findings.

## IV.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment consistent with this opinion and thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  30th  day of July, 2008.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

16